Mr. Chief Justice Shaukey
delivered the opinion of the court.
To an action of debt, the plaintiffs in error pleaded failure of consideration. The writing obligatory, it seems, was given for a tract of land, and the pleadings narrow the question down to a single matter of law, which depends on the construction of the 4th article of the treaty with the Chickasaw Indians, a part of which is in these words : “ The Chickasaws desire to have within their own direction and control, the means of taking care of themselves. Many of their people are quite competent to manage their own affairs, but some are not capable, and might be imposed upon by designing men; it is therefore agreed that the reservations hereinafter admitted, shall not be permitted to be sold, leased, or disposed of, unless it appear by the certificate of at least two of the following.persons, to wit: Ish-ta-ha-to-pa (the king), Levi Colbert, George Colbert, Martin Colbert, Isaac Albertson, Henry Love, and Benjamin Love, of which five have affixed their names to this treaty, that the party owning or claiming the same is capable to manage and take care of his affairs, which fact, to the best of his knowledge or information, shall be certified by the agent; and furthermore, that a fair consideration has been paid ; and thereupon the deed of conveyance shall be valid, provided the president of the United States, or such other person as he may appoint, shall approve the same, and indorse it on the deed,” &c.
*540 The defendant purchased of Henry Love, and the question is, whether, as to him, the certificates mentioned in the 4th article were necessary to enable him to make a valid conveyance, he being one of the persons appointed to certify to the capacity of others.
As a general rule, the certificates constituted prerequisites to a good title. This was decided in the case of Niles & Lewis v. Anderson Orne, 5 How. 365; though the title from the Indian was there sustained as an equitable title, but the complainants had been prevented from obtaining the proper certificates by the fraud of the opposite party.
On a strict construction of the treaty, and an observance of its letter, the certificates would seem to be required in all cases. The provision applies to all reservations thereafter to be admitted. But if we construe it by it’s spirit and policy, the case before us would seem to constitute an exception to the general rule. The object of the article is plainly indicated by the language used in its commencement. The Chickasaws desired to have the means of taking care of themselves. Many of their people were competent to manage their affairs, but others were not, and might be imposed upon. The design was to protect those who were incapable of taking care of their property; protection to that class was the object. They could not be designated in the treaty. Competent persons were therefore appointed to determine who were and who were not capable of judiciously disposing of their property. Such persons were authorized to make valid conveyances; incompetent persons cannot convey, at least that seems to be a consequence. What then was necessary in order to enable a party to convey? He must produce evidence of his competency to do so, and the treaty points out what evidence is required. It prescribes the means by which the fact is ascertained, and in requiring the certificate of persons therein named, as to a matter in which judgment alone is to determine, it thereby admits that those persons possess the required capacity. As to them the treaty itself furnishes the evidence of the fact, which they are required, by the exercise of judgment, to furnish as regards others. This is *541 a provision which • was designed for the body of the- people. This view is fortified by other considerations. These individuals, or most "of them, constituted the delegation that made the treaty; in which capacity they acted as the chosen representatives of the tribe. If they were capable of ceding the whole territory, they.must be capable of conveying their reservations. In the treaty, the obligations of the tribe to them are- acknowledged, and specific reservations made to each as a compensation for their services. They are not within the mischief intended to be guarded against, and the reason and spirit of the provision do not apply to them. The acknowledgment that some of the Indians were incapable of managing their affairs, could never have been intended to embrace these individuals. We are therefore disposed to adopt that construction in this instance which best comports with the spirit of the treaty. A different construction would be embarrassing in its consequences, without any beneficial result. The treaty establishes a sort of guardianship for incompetent persons.
Judgment affirmed.